## Wiedemann v. Crawford.

### (Decided February 16, 1911.)

### Appeal from Campbell Circuit Court.

Frauds—Statute Of.—A verbal agreement made between two persons, by which one of them is to furnish the money to buy land and the other is to have a specified interest in it, is not within the statute of frauds.

DOLLE, TAYLOR & O'DONNELL and RAMSEY WASHINGTON for appellant.

JAS. C. and R. A. WRIGHT for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee Crawford in September, 1909 filed his petition in equity against the appellant Wiedemann, in which he set out that in January, 1909, the suit of Charles Wiedemann against the Highland Hotel Company for a sale of the property of that company was pending in the Campbell circuit court; that he and Wiedemann were then each owners of preferred and common stock in said company, and each had a claim for money loaned to it, and that in January, 1909, they entered into the following written agreement:

"Both owning preferred stock in, and claims against The Highland Hotel Company, and its property being about to be sold in receivership proceedings, we agree to purchase at the sale under such order, in the name of

some one agreed upon by us, all real estate (excepting the Shelley Arms property) of said The Highland Hotel Company, and all its personal property, at a figure not exceeding the claims (excluding the stock claims) against said hotel company, and that our interests and ownership in such purchase shall be in proportion to the sums invested heretofore by us in the enterprise of said hotel company, including both common and preferred stock and loans. As Mr. Wiedemann will probably be absent when said sale occurs, the question of purchasing at a higher figure, shall be a matter of agreement between Clarence Wagner, representing said Wiedemann, and L. J. Crawford.''

That afterwards, they agreed on L. C. Widrig as the person to purchase the property for them under the agreement. That on March 8, 1909, the real estate mentioned in the agreement, and the personal property of the Highland Hotel Company was by the master commissioner in said case and under the orders of sale therein sold to L. C. Widrig, and the sale was reported to and confirmed by the court in March, 1909. That afterwards, each of them paid for the property sold as above stated in proportion to their respective interests, estimated and agreed upon between them as follows, the interest of Crawford being 29 23-70 per cent, and the interest of Wiedemann 70 34-70 per cent. That afterwards, in September, 1909, the property purchased by Widrig was by order of court conveyed to him. He further set up that prior to the 30th day of March, 1909, Wiedemann, acting through Clarence Wagner, his attorney in fact, entered into an agreement with Crawford, that Widrig should buy for Crawford and Wiedemann the Shelley Arms property, and that Wiedemann should advance by way of a loan the sum necessary to pay for the same at the sale thereof by the master commissioner, and that on March 30, 1909, Widrig purchased the Shelley Arms property for Crawford and Wiedemann pursuant to said agreement, and the sale was reported and confirmed by the court. That afterwards Wiedemann in accordance with the agreement paid to the master commissioner the purchase price of the Shelley Arms property, and in September, 1909, it was conveyed to Widrig. He averred ''that Widrig held the title to all of the property conveyed to him as before stated as trustee for himself and Weidemann, as their interests appear in the written

agreement," but that in September, 1909, Wiedemann secretly and fraudulently procured Widrig to convey to him all of said property in violation of the rights of Crawford. He prayed that the court direct Wiedemann to convey to him an undivided 29 23-70 interest in all of the real and personal property purchased and conveyed as above stated, and that the conveyance of the Shelley Arms property should contain a lien in favor of Wiedemann to secure the payment of its purchase price, $23,000, with interest.

In an amended and substituted answer filed by Wiedemann, he admitted that the written agreement as to the Highland Hotel Company property (excepting the Shelley Arms property) was entered into, and that it was agreed that Widrig should purchase the property, except the Shelley Arms property, for himself and Crawford in accordance with the terms of the agreement, and that it was so purchased and conveyed to Widrig. He also admitted that their interests in this property were as set out in the petition, but he denied that Crawford had paid his proportion of the purchase price—setting up that this property (excepting the Shelley Arms property) was sold for $54,450, and that three bonds were executed by himself, each for one-fourth of the purchase price and one-forth thereof was due in cash on the day of the sale but was not paid. That afterwards the court directed the master commissioner to collect all of the purchase price excepting $9,000, which was to remain a lien upon the property, and that on June 25, 1909, he paid the entire purchase price, excepting this $9,000, and what was paid by Crawford. The substance of this portion of the answer being, that $9,000 of the purchase price was unpaid; that Crawford, excepting his proportion of this, which was unpaid, had paid his proportion of the remainder of the purchase price less $1,183.93, which he owed to Wiedemann on account of his having paid the entire purchase price. He further averred that although frequently requested so to do, Crawford had failed to pay him the $1,183.93 due, and consequently he took to himself a deed to the property, but expressed his willingness to convey (excepting the Shelley Arms property) to Crawford an undivided 29 23-70 interest in it upon the payment by Crawford of $1,183.93, with interest, and tendered a deed so conditioned.

In respect to the Shelley Arms property, he denied that at any time, acting through Wagner or any other person as his attorney or agent, he entered into an agreement with Crawford by which Widrig should buy for them the Shelley Arms property or by which he should advance by way of a loan a sum necessary to pay therefor or any part thereof; and denied that this property was purchased by Widrig pursuant to any such agreement. He further set up that during his absence in Europe, and prior to the sale of this property, Crawford falsely represented to Wagner, who was at that time his agent, that he, Wiedemann, had agreed with Crawford to buy the Shelley Arms property for their joint use, and that he, Wiedemann, was to advance the purchase price. That acting upon the belief that these representations were true, Wagner agreed with Crawford that Widrig should buy the Shelley Arms property in his own name for Wiedemann and Crawford and that they should each pay the same proportion of the purchase price they had theretofore agreed to pay for the other property. He further set up that upon learning of the representations made by Crawford to Wagner, and the agreement made as a result thereof, he promptly repudiated the same. And further pleaded that the agreement in reference to the Shelley Arms property if any was made, was void because within the statute of frauds in such cases made and provided. He admitted that Widrig conveyed to him the Shelley Arms property upon the payment of the full purchase price by him.

To these amended and substituted pleadings a general demurrer was filed and sustained, and Wiedemann declining to plead further a judgment was rendered directing him to convey to Crawford an undivided 29 23-70 per cent. interest in all the property except the Shelley Arms property, subject to a lien for the $9,000 due on the purchase price—no mention in the judgment being made of the $1,183.95 alleged to be due by Crawford on the purchase price of this property. He was also directed to convey a like interest to Crawford in the Shelley Arms property—the judgment reciting that Wiedemann should have a lien upon this property to secure the payment of 29 23-70 per cent. of the purchase price thereof due by Crawford.

So much of the judgment as relates to the property, except the Shelley Arms property, is objectionable be-

cause the answer of Wiedemann, which stands admitted by the demurrer, states that he paid for Crawford on account of the purchase price of this property $1,183.93, and that this sum was yet due and unpaid by Crawford. It seems from an order made in the case that the court was induced to ignore this defense because Wiedemann failed to assert it as a counterclaim against Crawford; but, it was not necessary that he should have done this. Crawford did not owe Wiedemann anything, nor did Wiedemann have any demand against Crawford that he could assert in a counterclaim. Under the written agreement relied on by Crawford, each was to pay his proportion of the purchase price, and Crawford averred he had done so, while Wiedemann denied it—thereby making an issue of fact that the court should have disposed of. Accepting as true the allegations in Wiedemann's answer, Crawford was not entitled to a conveyance until he had paid his proportionate part of the purchase price, and the court should have ascertained the amount due by Crawford and directed its payment before ordering a conveyance by Wiedemann.

As to the Shelley Arms property, assuming that the agreement set up by Crawford between himself and Wagner as the authorized agent of Wiedemann was made, and that it was not in writing, the first question is, was it a valid and enforcible contract, or, within the statute of frauds, and, therefore, not binding upon either party? To clearly apprehend this question, we may at the risk of repetition state that the substance of this verbal agreement was that Wiedemann through his authorized agent Wagner agreed with Crawford that one Widrig should buy at commissioner's sale the property, and Wiedemann should advance by way of a loan a sum sufficient to pay for the same. But, it is not shown what interest Crawford should have in this property.

In the case of Garth v. Davis, 120 Ky., 106, it appeared that Davis and Johnson by parol agreement between themselves entered into a co-partnership to buy certain lots of land, the agreement providing that each should buy in his own name for the partnership certain of the lots, which they each did buy, and that both were thereafter to pay for and own them as co-partners. The question before the court was, whether this oral agreement between Davis and Johnson was within the statute of frauds and, therefore, not enforcible, and it

was held that the contract was not within the statute. In principle, there seems no difference between that case and this.

In Vaught v. Hogue, 32 Ky. Law Rep., 1061, Vaught filed his petition against Hogue, charging that they had entered into a contract, by the terms of which Vaught was to furnish certain sums of money for the purchase of a tract of land, and in consideration of the fact that he agreed to furnish the money Hogue bound himself to repay the money, and agreed that the timber upon the land should belong to both of them, and after paying the expense of cutting and removing, the profits were to be divided equally. That in pursuance of this agreement, he furnished Hogue the money to purchase the land but that Hogue procured the deed to be made to himself without the knowledge or consent of Vaught. The plea of the statute of frauds was interposed by Hogue, and in disposing of the case the court said:

"In our opinion the contract relied on by plaintiff Vaught was not within the statute of frauds. It was agreed between himself and the defendant Hogue that he should furnish the defendant money to buy a certain tract of land, and that the defendant should repay to him the money so furnished, and that all the profit made on the transaction should be divided equally between them. Whether they may be regarded as partners in the transaction, or jointly interested in the venture, or it be considered that Hogue was acting as the agent of Vaught, in the purchase of the land, the contract was an enforcible one. To the same effect is Siler v. Jones, 110 S. W., 255."

There is a well marked distinction between this class of cases and those of which Estes v. Estes, 142 Ky., 261, is an example. To illustrate, if A. agrees with B. that he will buy real property not owned by B., and then convey the same to B., the agreement is not enforcible, as held in the Estes case. But, if the agreement is that A. shall buy real property on the joint account of A. and B., or in partnership or he is acting as the agent of B., then the contract is valid, as held in the cases supra. There is also another class of cases in which verbal agreements have been held valid, as where land is purchased at execution or decretal sale under an agreement between the debtor and the purchaser that the latter shall convey it according to the terms agreed upon. Fishback v. Green,

87 Ky., 107. Upon the authority of the cases cited as applicable to the question before us, we conclude that the agreement, if made, was not within the statute; but, as it was denied, the court should have heard proof before disposing of it.

Conceding that the agreement, if made, was not invalid as being contrary to the statute, it is yet insisted that as stated in the petition it is too vague and indefinite to be enforced. As the case must be reversed, we will not express any opinion upon this point, but the lower court should require Crawford to make his petition more specific in respect to the interest he should have, and when and how he was to re-imburse Wiedemann on account of the amount paid for him, and from the pleadings and evidence the court must determine whether or not the contract was sufficiently definite to be enforcible, and also if Wiedemann authorized Wagner to enter into the agreement.

Upon a return of the case each party may file such additional pleadings as they desire.

Wherefore, the judgment is reversed, with directions to proceed in conformity with this opinion.