## Crawford v. Wiedemann.

(Decided June 6, 1916.)

### Appeal from Campbell Circuit Court.

1. Joint Tenants—Rents—Title.—Where one of two persons jointly interested in property holds the title but does not use or occupy it and the title is held in recognition of the interest of the other party in the property, the holder of the legal title is not charge-able with rents for use and occupation of the property, for in order to so charge him, it is necessary for him to oust his joint owner from all possession of the property and to deny any right or title in him and assert exclusive title to himself.

2. Joint Tenants—Rents.—Where W. held the legal title to property, but recognizing the right of L. to a certain undivided interest therein and is willing and offers to execute a deed to L. for his interest upon condition that the latter will pay to W. the amount of his part on the purchase price due from L., the latter can not charge W. with rent for use of the property pending litigation over the amount due from him.

3. Joint Tenants—Settlement of Accounts—Contribution.—When property is held as last stated above, the holder of the legal title in a settlement of accounts between the owners is entitled by way of contribution to recover from his joint owner his pro-portion of expenses incurred in looking after, caring for and pre-serving the joint property, including sums paid for insurance pre-miums for policies covering the property.

J. C. WRIGHT for appellant.

RAMSEY WASHINGTON and DOLLE, TAYLOR & O'DONNELL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming on appeal; reversing in part and affirming in part on cross-appeal.

The Highland Hotel Company, a corporation, was the owner of considerable property in Campbell county, con-

sisting of a couple of hotels, including grounds, buildings and parks, suitable for summer resorts and entertainments. The appellant, L. J. Crawford, and appellee, Charles Wiedemann, were the principal owners of the stock, both common and preferred, of that corporation. It became largely indebted to various parties, and prior to January, 1909 the Wiedemann Brewing Company, one of its principal creditors, filed suit against it and caused the property to be placed in the hands of a receiver. This suit finally resulted in a decree for a sale of the property. The appellant and appellee, being the principal stockholders, entered into a written agreement in January, 1909 to the effect that at the sale to be made by the master commissioner of the court, they would buy the property if it did not sell for exceeding an agreed price. It was stipulated, however, that this purchase should not be made in their names but through a trustee to be agreed upon by them. Before the sale they agreed that this trustee should be L. C. Widrig, and accordingly, on March 8, 1909, when the property was sold, Widrig purchased it, and executed bonds for the purchase price with the appellee Wiedemann as his surety. In the meantime, it was also agreed between the parties, as the result of some character of settlement between them, that their interest in the property so purchased, should be 29 23-170 per cent. to Crawford and 70 47-170 per cent. to Wiedemann, and the trustee should hold the property for the two with their interests in the proportions stated. It seems that the property was operated during the summer season of 1909 until some time in the early fall when the season closed and its operation ceased. During the time it was thus operated, it was occupied by the appellant as he desired, but before the first of September of that year, a disagreement arose between the appellant and appellee as to how the property should be managed and conducted in the future. It is not material for the purposes of this case as to what constituted these differences, but we gather that one of them desired to incorporate the property and operate it through a corporation to be organized, while the other one was opposed to this. At any rate, on September 1, 1909, the appellant, because of these differences, removed from the property and has refused to occupy any portion of it during the time extending over the period involved in

this litigation, which was from September 1, 1909, until January 24, 1912.

After the purchase of the property by Widrig, the parties each contributed different amounts towards the payment of the purchase bonds, and upon September 7 of that year, which was after the disagreement between the parties, as we have seen, the appellee, Wiedemann, personally paid the balance of the bonds, except $9,000.00, which had been ordered by the court not to be collected but to remain a lien upon the property. As to why this was done is of no concern in this case. When Wiedemann thus discharged the bonds, he paid $1,183.93 more than was due from him on his part, or, in other words, he paid that much which should have been paid by Crawford. At the time that appellee paid the balance of the bonds, the appellant was claiming from him certain indebtedness which appellee disputed, and was also insisting that he, appellant, had either paid, or more than paid, his part of the bonds. The appellee on September 10, 1909, caused the trustee, Widrig, to execute to him a deed to the property, but he states that: "Mr. Crawford was told that at any time he would make payment of his proportion, he would get his interest in the property; I was willing to deed it to him." Seven days after the appellee obtained the deed from the trustee, which was September 17, 1909, the appellant, in writing, demanded of the appellee that he at once execute a written declaration of trust that the property was held by the appellee as trustee for the appellant to the extent of his interest, as herein shown. Without waiting for that to be complied with, and on the next day, the request for the written declaration of trust was withdrawn and in lieu thereof a demand was made for an absolute deed to appellant for his proportionate undivided interest in the property. This last demand was accompanied with a threat that if it was not complied with before the following Saturday, the appellee would be sued to compel him to comply therewith. There also accompanied that letter a bill for a fee of $5,000.00 in favor of appellant for services rendered in the receivership suit of the Wiedemann Brewing Company against the Highland Hotel Company, although there had been allowed by the court to appellant, as attorney in that case, a fee of $3,000.00, appellant contending, however, that the claim for the additional fee of $5,000.00 was for

services rendered in that suit in addition to those for which the allowance was made. This last letter also stated that if the demand for the fee was not paid by the following Saturday that appellee would be sued for it. The letter furthermore notified appellee that appellant would, on the following Saturday, file a suit, the purpose of which would be, to have the court adjudge that the appellee by taking the deed from Widrig, merged all of his interest in and to the $9,000.00 uncollected purchase money, and that the interest of appellant therein should be prior to any claim of appellee or any part of it going to him. Believing that appellant was indebted to him in the sum of $1,183.93, these various requests were refused by appellee, and the threatened suits by appellant were filed. As a part of the history of the bitter litigation which followed, it may be stated that two other suits, besides this one, have heretofore been in this court and each of them decided adversely to appellant. See Crawford v. Wiedemann, 158 Ky. 333; Wiedemann v. Crawford, Idem. 657.

In this suit, which is the threatened one filed to compel appellee to execute a deed to appellant for his undivided proportion of the property, the appellee answered, claiming that there was a balance due him from the appellant upon the purchase money, and that they owned the property jointly, and that it was indivisible, and asked that the case be referred to the master commissioner to ascertain how much each party had paid on the purchase bonds, and that finally the property be sold for the purposes of division between the joint owners in proportion to their respective interests. The answer, as finally amended, averred that the appellant was indebted to the appellee in the sum of $1,183.93 for his part of the purchase money which had been paid by appellee, and that he was willing to execute a deed to the former for his undivided part of the property when the amount which he owed to the appellee should be paid; and further, that he had, on the 11th day of February, 1910, tendered to appellant a deed which appellee agreed to deliver to him upon condition that he pay this sum. A demurrer was sustained to this answer, and appellee declining to plead further, judgment was rendered in accordance with the prayer of the petition. From that judgment the appellee prosecuted an appeal to this court and the judgment was reversed. Wiedemann v. Craw-

ferd, 142 Ky. 303. The pertinent part of that opinion as it affects the matters involved in this suit, is:

"Accepting as true the allegations in Wiedemann's answer, Crawford was not entitled to a conveyance until he had paid his proportionate part of the purchase price, and the court should have ascertained the amount due by Crawford and directed its payment before ordering a conveyance by Wiedemann."

After the return of the case to the lower court, the pleadings of both parties were amended and the litigation was protracted, until finally a judgment was rendered ordering a sale of the property by the master commissioner, which was made by him on January 24, 1912, at which sale the appellant became the purchaser. In the pleadings of appellant, after the return of the case, it was claimed by him that there had been a stated account of all claims existing between him and the appellee, and that he had settled these by executing his note to the Wiedemann Brewing Company for the sum of $902.51. He furthermore claimed that for the period covered by the litigation to the sale on September 24, 1912, and back to September 10, 1909, previous thereto, the appellee should be charged with rent for the property which was alleged to be reasonably worth $7,500.00 per year. After the appellee obtained a deed from the trustee the appellant made it known that he would object to the appellee operating the hotel or using the property in connection therewith, and went so far as to have his attorney prepare a petition to enjoin the appellee from doing so. To avoid further entanglements, the appellee abandoned any effort to use the property in any way, but placed same in charge of a caretaker, kept it insured, and looked after it and made such repairs as were necessary to preserve it. He at no time forbade appellant from occupying any portion of the property, nor did the latter make any demand to do so. Indeed, according to the proof, if the property had been operated with no better results than had been theretofore had, its operation would have resulted in a loss to the owners. The pleadings of appellee, after the return of the case, presented his account which he had incurred in preserving the property during the time the deed was in his name, which included the necessary repairs, insurance premiums, taxes, and ground rent for a portion of the land used. There was also included in this ac-

count the sum of $625.00, which represented five months' salary of R. N. Talbot. The respective contentions made by the parties in their pleadings were denied, and the case was referred to the master commissioner to take proof and report on it, and his report was filed on the 11th day of March, 1914. It should be stated that the property involved in this suit is only a portion of that owned by the Highland Hotel Company, being that part of it known as the Altamont Hotel property; the other property of the Highland Hotel Company is what is known as the Shelly Arms property, which was first brought into this suit, but afterwards the litigation was discontinued as to it.

The report of the commissioner found that there was due from the appellant upon his portion of the purchase bonds executed by Widrig, the sum of $1,183.92, being in exact accord with the original contention of appellee. It was further found by him that the account of appellee incurred in looking after and preserving the property, as claimed by him, was both necessary and correct, and it was therefore allowed, with the exception of the amount paid as insurance premiums for policies upon the property, and the item of $625.00 paid to Talbot. These two items were disallowed by him. It is shown in the report that the appellant agreed to the correctness, as well as the necessity and reasonableness of the charges; he, however, denied, and yet denies his liability for any part of it. The commissioner in his report charged the appellee with rent of the Altamont Hotel property (being that involved in this suit) from September 10, 1909, the date on which Widrig deeded it to him, until January 24, 1912 (being the time appellant bought it at the decretal sale), at the rate of $4,000.00 per year. The appellant filed no exceptions to this report, but the appellee excepted to that part of it which disallowed the $625.00 paid to Talbott, and which disallowed the insurance premiums which he had paid to insure the property, and also to the allowance in the report against him for rent. Upon the trial of these exceptions, the court sustained the one filed to the report charging appellee with rent, but overruled those objecting to the disallowance by the commissioner of the $625.00 Talbot account, and the insurance premiums, and a judgment was rendered accordingly. In the judgment the defendant was given a lien upon the property for the sums

adjudged to him. Afterwards the appellant entered a motion to modify the judgment and to strike therefrom all of that part of it allowing to appellee any sum upon his account for repairing, taking care of, and preserving the property, and to strike therefrom that part of it giving to the appellee a lien upon the property to secure the sums recovered by him. This motion was overruled, from which the appellant prosecutes this appeal, and the appellee prosecutes a cross-appeal from the judgment disallowing him the insurance premiums and the Talbott account.

It will be seen that the questions for consideration are, as to the correctness of the judgment: (1) In charging appellee with rent; (2) giving him credit for the account for repairs and taking care of and preserving the property while appellee held the title to it; (3) refusal to allow appellee credit for the insurance premiums; (4) refusal to allow him credit for the Talbot account of $625.00; and adjudging to him a lien upon the property or its proceeds for the items upon which he recovered.

First. Taking up the question of rents; it is earnestly urged upon us that appellant and appellee were co-tenants in the ownership of this property, and that the facts in the record show that appellee ousted the appellant as his co-tenant and took charge of the property himself, and that under such circumstances he should be charged with rent. We are referred to a great many authorities, some originating entirely under the common law, and others under the peculiar statutes of the forum, showing under what circumstances a co-tenant is chargeable with rent; but an inspection of them will clearly show that the facts of this case do not bring it within the category of any of them. The general rule seems to be, that if there has been an actual ouster of one co-tenant by another, accompanied by a claim of adverse holding as against the ousted one, rent, for use and occupation, may, under certain circumstances, be recovered by the ousted tenant from the one who ousted him; especially if the property is incapable of occupation except as an entirety, and the tenant in possession, after such ouster, occupies and uses all of it. But, however this may be, running throughout all the books will be found two essential elements which must exist before the tenant sought to be charged is liable. These are: (a)

That the tenant sought to be charged and who is claimed to be guilty of an ouster, must assert *exclusive* claim to the property in himself, thereby necessarily including a denial of *any* interest or any right or title, in the supposed ousted tenant; (b) he must give notice to this effect to the ousted tenant, or his acts must be so open and notorious, positive and assertive, as to place it beyond doubt that he is claiming the *entire* interest in the property. In the notes to the case of Ward v. Ward, 52 Am. St. Reports, 911, and upon which appellant largely relies, an ouster is defined on page 929 to be:

"An ouster, whether committed against a tenant in common or against an owner in severalty, is a wrongful dispossession or exclusion of a party from real property who is entitled to be in possession thereof, and must necessarily be accompanied with an intent to effect such exclusion. Freeman on Co-tenancy and Partition, sec. 228."

It is furthermore to be noted that the principle laid down in that case was criticised by the learned author of the notes on page 930, as follows:

"We think the ruling in the principal case due to the fact that the compelling of a co-owner to account when he has neither received rents nor profits from a third person, nor been guilty of any ouster or exclusion of his co-owner, involves manifest injustice, and is contrary to the weight of the authorities."

We are also referred to the case of Early and Wife v. Friend, 16 Gratton, page 21, but a reference to that case will show that the tenant, from whom rent was sought to be collected, *actually* occupied the premises and used all of them to the *exclusion* of his co-tenant. Manifestly, that case can have no bearing under the facts we have here, because it is established without any contradiction whatever, that the appellee never, during the time for which rent is sought to be collected, either *occupied* or *used* the property involved, nor did he at any time, exclude the appellant from either using or occupying it, or deny his interest in it. On the contrary, the proof shows that the latter abandoned the occupancy of the property of his own accord, because of differences as to its management having arisen, and he declined to occupy it thereafter, or to make demand for such occupancy for the same reason. In 38 Cyc. 25, it is stated:

"Ouster is not necessarily a physical eviction. It may exist if there be possession of or under the adverse claimant, attended with such circumstances as to evidence a claim of exclusive right and title, and a denial of the rights of the other co-tenants, and if such possession continues uninterruptedly for the statutory period after the time that knowledge thereof is, in law, chargeable to those out of possession, it may become indefeasible. But before a tenant in common can rely on an ouster of his co-tenants, he must claim the entire title to the land in himself, and must hold the exclusive and adverse possession against every other person, thus repudiating the relation of co-tenancy, for an ouster of one tenant in common by his co-tenant is not to be presumed in the absence of some open, notorious act of ouster and adverse possession, and possession by a tenant in common is not adverse as to his co-tenants until they are so informed either by express notice or by acts of such an open, notorious, and hostile character as to be notice in themselves, or sufficient to put the co-tenants upon inquiry which, if diligently pursued, will lead to actual knowledge.''

Many cases from this court are referred to, but we will cite only Bush v. Fitzgerald, 125 S. W. 716; Baker v. Royal Lead, &c. Co., 32 Ky. Law Rep. 982; Rush v. Cornett, 169 Ky. 714.

It is perfectly clear from these authorities that there was no ouster of appellant by appellee under the facts of this case, unless, as is insisted, that the taking of the deed, *ipso facto,* produced it; but this can not be true because it was not done with the intention of depriving appellant of his interest in the property. On the contrary, the title was held by the appellee all the time with the expressed recognition of appellant's interest. Moreover, the opinion in this case in 142 Ky. 303, settled the questions as to the rights of the parties in and to the property, and the right of appellee to hold it under the deed until appellant paid the balance of his debt, which debt, as we have seen, was finally adjudged to be the exact amount which appellee claimed, and to which part of the judgment appellant filed no objections.

On the questions of the liability of one tenant to his co-tenants for rents, it is stated in the volume of Cyc., *supra,* page 63, as follows:

"In the absence of statute or agreement to the contrary, a tenant in common, while merely in possession of the common property, not excluding his co-tenants, nor denying them equal enjoyment, cannot be charged with rent for use and occupation, and where a tenant in common does not claim more than his proportionate share, and does not receive rents or profits for more than said share, and does not prevent his tenant in common from occupying the property or receiving or enjoying his proportionate share of the rents and profits, his co-tenant is not entitled to recover from him any parts of such rents or profits received."

The principle is upheld by numerous decisions from almost every state in the union, including the following from Kentucky: Fightmaster v. Beasly, 7 J. J. M. 410; Nelson v. Clay, 7 J. J. M. 138; Hixon v. Bridges, 18 K. L. R. 1068. See also 17 Amer. & Eng. Ency. of Law 690.

As we have seen in this case, the appellee did not occupy this property, he simply looked after and cared for it. In fact, he was deterred from occupying it by threats from appellant to enjoin him from doing so, and even if the facts of the case, as to the acts of appellee, under the authorities to which we are referred by appellant, were sufficient to charge appellee with rent, it would be but little short of gross injustice to make him account for rents when the one claiming the right to the rents forbade him to occupy the premises, and who could have obtained a deed at any time and ended the litigation by paying what he owed.

Without further consideration, we are convinced that the court correctly ruled, when it sustained appellee's exceptions to the commissioner's report charging him with rents.

Second. We have seen that the appellant agreed that the account of the appellee for repairs, and for taking care of and preserving the property, was not only correct as to the sums so expended, but that they were reasonable and necessary. In fact, the larger part of this account is for taxes and for ground rent, and the allowances of these items were so obviously correct that we will pass them without further notice.

As to that part of the account expended for taking care of and making necessary repairs, there is almost equally as little difficulty. The liability of one co-tenant for his proportionate part of the necessary expenses in

protecting and preserving the property, is well stated in 17 Amer. & Eng. Ency., page 686, in this language:

"The general rule is that all the co-tenants are liable in proportion to their respective interests for the necessary expenses connected with the protection and preservation of the common property, and where one tenant has borne the whole or more than his proper share of such expense, his co-tenants are liable to him for contribution; but one tenant cannot incur expenses on account of the common property and charge his co-tenants therewith, without the consent of the latter, unless such expense is necessary for the protection or preservation of the property."

In the notes to the case of Ward v. Ward, *supra,* 52 Amer. St. Reports, page 934, it is said:

"From the existence of this remedy an equity on the part of every co-tenant to contribute to repairs has been inferred, and hence it has been claimed that if any of them fails to discharge his duty, and thereby makes the whole discharge of the duty to repair rest upon another co-tenant, a promise will be implied in favor of the latter to contribute to the necessary outlay, and therefore that an action of *assumpsit* may be maintained upon this implied promise, or that some other proceeding may be sustained whereby just contribution may be compelled."

The rule, as stated in 38 Cyc. 54 and 55, is: "A tenant in common is held to be entitled to contribution for expenditures absolutely necessary for the benefit and preservation of the common property, and the right is even extended to charge the co-tenant with a just proportion of the reasonable expenses incurred, fairly and in good faith for the benefit of the common property or such as were from necessity dispensed for the common estate, even though the conduct of the paying tenant may not have been strictly equitable."

For cases from Kentucky, see Hotopp v. Morrison Lodge, &c., 110 Ky. 987; Vermillion v. Nickell, 114 S. W. 270.

As the expenses in question were reasonable, necessary and properly applied, we are convinced that they were correctly allowed.

Third. In one sense, a co-tenant having custody of the property is a trustee for his associates, and as a trustee is required to act in matters pertaining to the

trust property, in the absence of specific directions, as a reasonably prudent man would in looking after and preserving his own property, we are convinced that appellee not only had a right to insure this property, but that it was his duty to do so. In this day of advanced business thought and of more perfected rules for the conducting of business, not to carry insurance against possible loss by fire, would be characterized as a negligent act and one to be condemned by the best business methods; hence, it is said in Perry on Trusts, section 487: "A trustee would probably be justified in insuring the property, and in case of loss the insurance money would belong to the *cestui que* trust." Besides, we believe that a reasonable amount of insurance to protect against loss by fire, is essential to the proper "preservation of the common property," for which the co-tenant may be made to account for his proportion, according to the authorities, *supra*. It is insisted, however, that this insurance was taken out in the name of the appellee, and that it, therefore, covered only his interest in the property. The fault with this contention is, that the appellee held the entire legal title to the property, and he could have recovered the entire insurance, and held it subject to the right of appellant to demand and obtain his share of it. We conclude, therefore, that the court was in error in disallowing this part of the appellee's account.

Fourth. As to the Talbot account for $625.00, we are convinced that the trial court was correct in declining to allow it. It was paid to Mr. Talbot for the following five months after the hotel was closed in the fall of 1909, these five months, covering that part of the year between the seasons, for the operation of the property. It became known to the appellee before the closing of the 1909 season that there was considerable friction between himself and the appellant, and that the great probabilities were that this would result in a possible tying-up of the property so that it could not be operated during the season of 1910. It is also shown that this property, when in operation, was not a paying investment, and we conclude that the appellee had no right to retain Mr. Talbot as manager of the hotel through the closed season with a view to engaging him during the following open season, when, to do so, would in all likelihood be against the consent of the appellant,

and would, according to the past experience, result in no profit to either party, but on the contrary, a net loss.

Fifth. As to the last proposition wherein appellee was given a lien upon the property to secure the judgment which he obtained, we think it perfectly clear that this was justifiable. The sums for which the lien is given were each and all spent upon or about the joint property, and, it is not seriously contended on this appeal that this was error.

The question is raised that inasmuch as the appellant filed no exceptions to the commissioner's report, that he can not question the judgment on appeal. In other words, that his motion to set aside part of the judgment of which he complains here is not sufficient to present his complaints. There is much force in this, but in as much as we have seen the court committed no error in his ruling upon the merits of the questions presented by appellant on his appeal, we refrain from expressing an opinion concerning the point raised.

It results, therefore, that the judgment should be and is affirmed upon the appeal; and upon the cross-appeal it is reversed as to the item of insurance premiums, but affirmed as to the $625.00 paid to Talbot. The court below will render a judgment in accordance herewith.