NEILSON v. HASE.

5-1611                                    314 S. W. 2d 219

Opinion delivered June 16, 1958.

*Paul E. Gutensohn,* for appellant.

*Daily & Woods,* for appellee.

MINOR W. MILLWEE, Associate Justice. Appellees, Fred C. Hase and Elsa A. Hase, his wife, were the owners in fee simple of 160 acres of land in Sebastian County, Arkansas, prior to October 12, 1949. On that date they conveyed an undivided one-half interest in the minerals, and said interest subsequently passed through mesne conveyances to the appellants, C. M. Neilson and Woods Oil Corporation. After execution of the 1949 mineral deed, Fred C. Hase and wife continued to be the owners of the surface and an undivided one-half interest in the minerals until January 7, 1952, when they executed a full interest oil and gas lease to appellee, C. J. Haller, who in turn assigned said lease to appellee, Carter Oil Company.

The undivided one-half mineral interest severed by the 1949 deed was separately assessed for the 1952 general taxes which became delinquent. At the annual tax sale on November 9, 1953, appellee, Fred C. Hase, bid in the undivided one-half mineral interest and at the end of the two-year redemption period received a deed to said interest from the county clerk.

Appellants, C. M. Neilson and Woods Oil Corporation brought the instant suit on September 30, 1957, claiming that the purchase by Fred C. Hase at the 1953 tax sale of the forfeited one-half interest in the minerals should be treated as a redemption for the benefit of the appellants as his co-tenants, and not as a purchase; and that said tax deed should be declared void and title to said mineral interest quieted in appellants upon their tender to Hase of the amount of said delinquent taxes, penalty, interest and costs. Appellants also al-

leged a number of irregularities connected with the tax sale and the record of the assessment of the severed mineral interest but these allegations were not sustained by the proof. This appeal is from a decree adverse to appellants in which the chancellor found: "The conveyance in 1949, by defendants Fred C. Hase and Elsa A. Hase, of an undivided one-half interest in the oil, gas and other minerals did not create a tenancy in common between Hase and his grantees, but created two separate, distinct taxable estates to which Ark. Stats. Sec. 84-1304[1] does not apply."

It is undisputed that Fred C. Hase and wife owned the surface and undivided one-half mineral interest and that appellants owned the other one-half mineral interest in the lands as a result of the 1949 and other conveyances executed prior to the 1953 tax proceedings. Appellants contend the chancellor erred (1) in refusing to hold they were tenants in common as to said mineral interest, and (2) that the purchase by Hase of the tax title to the separately assessed one-half undivided mineral interest constituted a mere redemption for the benefit of appellants, his cotenants.

We find it unnecessary to determine whether Hase and the appellants were cotenants. Conceding, without deciding, that they were tenants in common, the purchase of the tax title by Hase did not amount to a mere redemption for the benefit of his cotenants. Appellants rely on the general rule that a cotenant who acquires a tax title to the entire property, either by purchasing at the tax sale himself, or subsequently buying from a purchaser who bought at such sale, cannot assert such title against his co-owners, except as a basis for contribution to repay him for his expenditure. His purchase simply amounts to a payment of the taxes, or a

---

[1] Sec. 84-1304 reads: " 'The purchaser at the sale of lands or lots, or parts thereof, for the taxes of the interest of any joint tenant, tenants in common or coparcener, or any portion of such interest, shall, on obtaining the deeds from the clerk of the county, hold the same as tenant in common with the other proprietors (or proprietor) of such land, or lot, and be entitled to all the privileges of a tenant in common, until a legal partition of such land, or lot, or part thereof, shall be made.' "

redemption from the sale, and gives him no right except to compel contribution. We have recognized this well-established rule in numerous cases but it is inapplicable here.

An exception to the foregoing general rule arises where the land has been assessed upon the tax books to and in the names of the owners of the undivided interests respectively, and when the owner of each undivided interest could have paid his own tax unaffected by the fact of joint interest, and where the subsequent tax sale and deed are based upon the separate assessment. The annotator states the applicable rule in 54 A. L. R. 906, as follows: "Where taxes are assessed separately against the interest of each cotenant, rather than against the common property as a whole, any cotenant may acquire exclusively for himself, with his own money, title to parts of the property based upon tax sales against the other cotenants, provided, of course, he acts in good faith, and is under no contractual obligation, express or implied, to pay taxes assessed against his cotenants." So, where the undivided interests of tenants in common are separately assessed, and there is no obligation resting on one of the tenants to pay the taxes of the others, he may acquire the interests of his cotenants through a sale thereof for delinquent taxes. 86 C. J. S., Tenancy in Common, Sec. 64 b (1).

Many cases recognizing the exception to the general rule are collected in other annotations on the question in 70 Am. St. Rep. 101; 116 Am. St. Rep. 368; 85 A. L. R. 1538. One of these is *Brittin* v. *Handy*, 20 Ark. 381, 73 Am. Dec. 497, where the court approved the following statement from 1 Lomax Dig. 262: "It is, therefore, considered that joint tenants and coparceners stand in such confidential relations in regard to one another's interest, that one of them is not permitted in equity to acquire an interest in the property hostile to that of the other. And, therefore, a purchase by one joint tenant or coparcener of an incumbrance on the joint estate, or an outstanding title to it, is held at the election of his co-tenants within a reasonable time, to inure to the

equal benefit of all the tenants, upon the condition that they will contribute their respective ratios of the consideration actually given.

"The same equity is considered as subsisting between tenants in common under the same instrument. But it is suggested that tenants in common, probably, are subject to this mutual obligation only where their interest occurs under the same instrument, or act of the parties, or of the law, or where they have entered into some engagement or understanding with one another, for persons acquiring unconnected interests in the same subject by distinct purchases, though it may be under the same title, are probably not bound to any greater protection of one another's interests, than would be required between strangers." The *Brittin* case is also cited in support of the following statement of the rule in Thompson on Real Property, Sec. 1862: "If tenants in common occupy and improve the common land in severalty, and each is assessed and pays taxes on a particular portion, one of them can not afterwards, upon a sale of the land for taxes in separate parts, invoke the relation of cotenancy to defeat the tax title acquired by the other." See also, 14 Am. Jur., Cotenancy, Sec. 54. We are convinced the same rule should apply to a purchase by a cotenant of a tax title to undivided mineral interests separately assessed, as in the instant case. The Oklahoma court so held in *Patterson* v. *Wilson,* 203 Okla. 527, 223 P. 2d 770.

We have held that the sale of an undivided mineral interest operates as a severance of said interest from the surface and creates two separate and distinct estates. *Huffman* v. *Henderson Co.,* 184 Ark. 278, 42 S. W. 2d 221. In *Pasteur* v. *Niswanger,* 226 Ark. 486, 290 S. W. 2d 852, we said: "Owners of leasehold working interests are not cotenants of the owners of the fee or surface of the land. Their interests are of a different kind. Their interests are also of a different kind to the interests of the owners of mineral rights where severed from the land."

Regardless of whether Fred C. Hase was a tenant in common with the appellants, or the owner of a completely separate and independent estate, his purchase of the separately assessed mineral interest at the tax sale did not constitute a mere redemption inuring to the benefit of the appellants. When he executed and delivered the deed to the undivided one-half mineral interest and received the consideration therefor, there remained no duty or obligation, legal or moral on his part to pay the taxes on such interest, and it is not shown that he was guilty of any fraud or inequitable conduct in connection with his purchase of the tax title. It follows that Sec. 84-1304, *supra,* does not apply where the tenant in common merely purchases an undivided mineral interest separately assessed and there is no duty resting on him to pay the taxes on such interest. Since the regularity of the 1953 tax sale is not in question, the chancellor acted correctly in dismissing appellants' complaint seeking cancellation of the 1955 tax deed and in quieting the title of the appellees as against the appellants. The decree is accordingly affirmed.