Bill BROWN *v.* Roberta BROWN

77-290                                                    563 S.W. 2d 444

Opinion delivered March 27, 1978
(In Banc)

*John R. Henry,* for appellant.

*William B. Howard,* for appellee.

GEORGE HOWARD, JR., Justice. We are to decide whether the holding of the trial court declaring that a fire insurance policy obtained by appellant, wherein appellee, his cotenant, was not designated as an insured, inured to the benefit of appellee is supported by the preponderance of the evidence.

## THE FACTS

Appellant and appellee were divorced on February 27, 1974. The divorce decree provided that the ownership of the dwelling house and lot owned by the parties be converted from an estate by the entirety to a tenancy in common. Appellee was granted exclusive possession of the property until such time as the youngest child of the parties reached his majority or until the appellee remarried. Appellee remained in possession of the dwelling house from February, 1974, to January, 1975, when she remarried. During the period from February, 1974, to January, 1975, appellee paid all of the monthly installment notes due Farmers Home Administration under an indebtedness in the sum of $12,300.00 and secured by a note and mortgage. The note and mortgage were jointly executed by appellant and appellee. Appellee also paid the insurance premiums during this period in the sum of $360.00 which was required under the terms of the mortgage.

Appellee discontinued the monthly mortgage payments and the insurance premiums in January, 1975, and consequently, the insurance coverage lapsed for nonpayment of premiums.

In March, 1975, appellant procured a policy of insurance in the sum of $26,000.00, at the request of Farmers Home Administration, from State Farm Insurance. Appellant designated himself as the sole insured while Farmers Home Administration was designated as mortgagee.

The dwelling house was destroyed by fire in November, 1975, and pursuant to the request made by the attorney for appellee, State Farm made the draft, evidencing the insurance proceeds for the loss, payable to appellant, appellee, Farmers Home Administration and the attorney for appellant.

Appellant filed a petition for declaratory judgment in the Chancery Court of Craighead County seeking an order declaring him as the sole owner of the proceeds. However, before the trial of the matter, the parties agreed that the insurance draft would be endorsed by all concerned and the proceeds deposited in the registry of the trial court. The parties further agreed that the clerk of the court should be authorized, pursuant to court order, to pay from these proceeds the following sums: (1) The sum of $12,831.89 to Farmers Home Administration, thus paying the mortgage indebtedness in full; (2) to appellant's attorney for services rendered in connection with the recovery of the insurance proceeds the sum of $3,000.00; and (3) the sum of $2,500.00 to appellee to satisfy a judgment obtained by appellee against appellant for arrearages due for nonpayment of child support payments.

Appellee filed pleadings in the action for declaratory judgment alleging, among other things, that she was entitled to one-half of the net proceeds remaining in the registry of the court.

## FINDINGS OF THE TRIAL COURT

1. That on or before March 14, 1975, and after the

appellee had abandoned the premises, the appellant entered upon and took possession of the premises, and he occupied same as a private residence; and that this occupancy continued until the dwelling burned on November 4, 1975.

2. That on March 14, 1975, appellant obtained fire insurance coverage on the dwelling house and that appellant was the only named insured on the policy; and that Farmers Home Administration was designated in said policy as mortgagee; and that appellant paid the premiums for such insurance coverage.

3. That appellant and appellee were tenants in common; and that at the time of the loss, appellant was in possession of the property as a tenant in common; and that the insurance policy which appellant acquired inured to the benefit of appellee; and that appellee is entitled to one-half of the net proceeds remaining on deposit in the registry of the court.

## APPELLANT'S CONTENTION FOR REVERSAL

1. That the court erred in declaring that the insurance policy acquired by appellant for his own benefit inured to the benefit of appellee.

## THE DECISION

In *Clements* v. *Cates*, 49 Ark. 242, we made the following observation:

"The law forbids a trustee, and all other persons occupying a fiduciary or *quasi* fiduciary position, from taking any personal advantage, touching the thing or subject as to which fiduciary position exists; or, as expressed by another, 'whereever one person is placed in such relation by another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him or interested with him in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated.' If such a person acquires an interest in property as to which such a relation exists he holds it as a trustee for

the benefit of those in whose interest he was prohibited from purchasing, to the extent of prohibition. This rule applies to tenants in common by descent, with the same force and reason as it does to persons standing in a direct fiduciary relation to others. For they stand by operation of law in a confidental relation to each other, as to the joint property, and the duty is imposed on them to protect and secure their common interests. They have a community of interest which produces a community of duty, and imposes on each one the duty to exercise good faith to the others. Neither can take advantage of the other by purchasing an outstanding title or incumbrance and asserting it against them. Such an act would be inconsistent with good faith, and 'against the reciprocal obligations to do nothing to the prejudice of each other's equal claims which' their relationship created. . . . ."

In *Hendrix* v. *Hendrix,* 256 Ark. 289, 506 S.W. 2d 848, we made the following observation:

"We have long held that between tenants-in-common there is a fiduciary relationship, for they stand by operation of law in a confidential relation to each other, as to the joint property, and the duty is imposed on them to protect and secure their common interest."

In reviewing the evidence in this record *de novo,* as we must, we are persuaded that the trial court's holding is supported by a preponderance of the evidence and consequently, the trial court's decision is affirmed.

It is clear from this record that both appellant and appellee were tenants in common in the property involved as a consequence of the trial court's action in converting the property owned by the parties from an estate by the entirety to a tenancy in common. *See:* Ark. Stat. Ann. § 34-1215 (Repl. 1962 and Supp. 1977). As such, a fiduciary relationship existed between them which imposed on each a duty to protect and secure their common interest. From February, 1974, to January, 1975, appellee maintained insurance coverage, at her own expense, for the benefit of herself and for appellant. After appellee remarried and decid-

ed to move elsewhere, she immediately advised the appellant of her plans to the end that appellant could assume possession of the premises. Moreover, the trial court found that the appellant took possession of the premises and occupied same as his private dwelling. Appellant did not see fit to obtain insurance coverage until he was requested to do so by Farmers Home Administration. However, appellant's effort to obtain insurance coverage to the exclusion of his cotenant is to no avail.

It is interesting to note that the record reflects that although appellee paid the monthly installments to Farmers Home Administration between February, 1974, and January, 1975, appellant readily admitted on cross-examination that he claimed as a deductible item on his federal income tax return the interest paid by appellee, during this period, to Farmers Home Administration on their joint indebtedness. Moreover, it is further interesting to note that the trial court in the divorce proceedings between appellant and appellee expressly enjoined the appellant from burning the dwelling house down when the court awarded appellee possession of the property.

Appellant has cited the following cases in support of his position that the trial court erred in holding that the insurance proceeds inured to the benefit of appellee: *Langford* v. *Searcy College*, 73 Ark. 211, 83 S.W. 944; *Barner* v. *Barner*, 241 Ark. 370, 407 S.W. 2d 747. These cases hold essentially that a contract of insurance is a personal contract which inures to the benefit of the party with whom it is made and by whom the premiums are paid. But these cases are to be distinguished from the instant case and, consequently, are not controlling.

In *Langford* v. *Searcy College,* supra, the Board of Directors of Searcy College leased certain property containing certain structures to one R. B. Willis and others for a term of two years to be used for school purposes. It was understood that if the school proved a success, the lessees would propose to purchase the property. At the time of the execution of the lease, there was an outstanding indebtedness against the property which was secured by a mortgage. During the term of the lease, the indebtedness matured and foreclosure

proceedings were instituted on the mortgage against the Board of Directors of Searcy College. Pursuant to a foreclosure decree, a sale was conducted and A. W. Yarnell and others became the purchasers. Following the sale, Mary E. Speers and William H. Langford, who were associated with R. B. Willis, lessee, of the Board of Directors of Searcy College, received a warranty deed from A. W. Yarnell and his associates whereby the property was conveyed in fee to Mary E. Speers and William H. Langford. The grantees acquired insurance coverage on the structures located on the premises and as a consequence of a fire, insurance proceeds in the sum of $20,000 were paid to Mary E. Speers and William H. Langford. The Directors of Searcy College claimed that they were entitled to the insurance proceeds. In reversing the trial court's holding that the Directors of Searcy College were entitled to the proceeds, we held that inasmuch as the equity of redemption of Searcy College had been foreclosed and the legal title thereto passed to Yarnell and his associates, who sold it to Mary E. Speers and William H. Langford under a conveyance that was absolute and unconditional, and there was no contract by which it was agreed that the property would be held in trust by Mary E. Speers and William H. Langford for any purpose, Mary E. Speers and William H. Langford were lawfully seized in fee of the property. Consequently, the contract of insurance was a personal contract with Speers and Langford and the property was insured for their benefit. In other words, we held in *Langford* v. *Searcy College,* supra, that inasmuch as there was no fiduciary relationship existing, the insurance coverage did not inure to the benefit of the Board of Directors of Searcy College.

In *Barner* v. *Barner,* supra, we held that where a legal life tenant insures the property in his own name and for his own benefit and pays the premium from his own funds, the insurance policy does not inure to the benefit of the remainderman in the absence of a fiduciary relationship between them or an agreement between the life tenant and the remainderman as to which of them shall procure and maintain insurance coverage.

Affirmed.

GEORGE ROSE SMITH and BYRD, JJ., dissent.

FOGLEMAN, J., concurs with written opinion.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the majority opinion and its result. The limitation on the fiduciary relationship between tenants in common stated in the dissent is far too narrow. In *Brittin* v. *Handy*, 20 Ark. 381, 73 Am. Dec. 497, the proper line was drawn and we have not departed from it. The relationship exists whenever the tenants in common hold, not only under a common ancestor, but also under one instrument, or as a result of the same purchase, or where they hold by the same title. The rule was not changed by the dictum quoted in the dissenting opinion from *Trout* v. *Harrell*, 217 Ark. 670, 233 S.W. 2d 233. I do not disagree with that statement, however. It simply does not affect the rule of *Brittin*, which has not changed from the day it was announced. The general principle of *Brittin* was applied in *Hayes* v. *Gordon*, 217 Ark. 18, 228 S.W. 2d 464, where the cotenants were husband and wife and the tenancy was by the entirety. The *Brittin* rule was restated in full in *Neilson* v. *Hase*, 229 Ark. 231, 314 S.W. 2d 219 and was in no way impaired by the holding in that case. The decision in *Neilson* fully recognized the rule. *Hayes* was decided shortly before *Trout* but *Neilson* was decided after *Trout*.

The tenancy in common in *Neilson* certainly was not created by the same instrument. Neither did it result from the same purchase. Nor did the tenants in common hold by the same title.

I cannot accept the classification of the *Brittin* rule as dictum. Whether statements in opinions of courts are dictum engenders much debate. We recently rejected an argument that language from a prior opinion, adopting a test, was dictum because it constituted the adoption of a test which was essential to the decision. See, *Greenlee* v. *Munn*, 262 Ark. 663, 559 S.W. 2d 928. The situation in *Brittin* was closely parallel. After stating the test, we said that the parties in *Brittin* were not in a confidential or fiduciary relationship. The language of the opinion indicates that the decision was based upon two factors, one of them being the test stated at some length. We said:

It may be further remarked that Brittin and Handy were not tenants in common under the same instrument, etc., but that they purchased at different times, and held by different titles, though both of their titles were derived from the same source.

The statement in *Brittin* was not just a stray remark made without adequate support. It is quite true that the confidential relationship is virtually inescapable when there is a joint tenancy or a tenancy in common by descent. But the matter of the relationship of other tenancies in common is treated in Freeman on Cotenancy & Partition, a text that has been widely cited. That author said:

## RESTRAINTS ARISING FROM FACT OF COTENANCY

§ 151. Relations are those of Mutual Trust. — *****

Tenants in common by descent are under no other or greater obligations towards one another than other cotenants frequently are. Where two or more come to an estate by devise or descent from a common source of title, the relations between them are presumed to be relations of trust and confidence. Such a presumption may not appear so strong where the cotenants acquire their respective interests, at different times and by different conveyances; and it may, in certain cases, disappear altogether. But where the cotenants acquired their interest by a joint conveyance, under which they both went into possession, there can be no doubt that the relation necessarily produced is as much one of trust and confidence as though it originated in devise or descent. And even where the cotenants come to their titles at different times and from different grantors, they may, by being in the actual joint possession, and by a course of behavior in reference to one another and to the common subject of ownership indicating an intent to support and respect the common title, create relations of mutual trust and confidence as strong in fact and as worthy of consideration in law, as the relations growing out of the acquisition of title from a common source, by the same purchase or descent. *****

*****

§ 155. When Purchase of Adverse Title permitted.
— As the rule forbidding the acquisition of adverse titles
by a cotenant, from being asserted against his com-
panions, is always said to be based upon considerations
of mutual trust and confidence supposed to be existing
between the parties, the question naturally arises
whether the rule is applicable where the reasons on
which it is based are absent. Joint tenants, tenants by
the entirety, and coparceners, always hold by and un-
der the same title. Their union of interest **and of** title
is so complete, that, beyond all doubt, such a relation of
trust and confidence unavoidably results therefrom that
neither will be permitted to act in hostility to the in-
terests of the other in reference to the joint estate.
Tenants in common, on the other hand, may claim un-
der separate conveyances, and through different grant-
ors. Their only unity is that of right to the possession of
the common subject of ownership. As their connection is
not necessarily so intimate as that of other cotenants, it
may well be doubted whether they should always be
subject to the restraints imposed upon the others. There
are many cases in which the rule in regard to the ac-
quisition of an adverse title by a cotenant is spoken of in
general terms as applying to tenants in common,
irrespective of their special and actual relations to one
another. But an examination of the decisions clearly
shows that tenants in common are not necessarily
prohibited from asserting an adverse title. If their in-
terests accrue at different times, and under different in-
struments, and neither has superior means of informa-
tion respecting the state of the title, then either, unless
he employs his cotenancy to secure an advantage, may
acquire and assert a superior outstanding title, especial-
ly where the cotenants are not in joint possession of the
premises.

I do not agree that the hypothetical situation postulated
in the dissenting opinion would be a matter of form rather
than substance. I would say that if two parties bought by the
same purchase and took separate deeds, they would still be in
a confidential and fiduciary relationship. If they did not ac-

quire title by the same purchase and took by separate deeds, there would certainly be a reason for doing so, and avoidance of the confidential and fiduciary relationship would be appropriate.

Unquestionably, appellant and appellee became cotenants by virtue of one instrument, one purchase and by the same title. If that was not sufficient they certainly became tenants in common by one act, or one instrument, i.e., the divorce decree, and it was the same title.

I will not elaborate on the testimony, but, even though appellant tried to say that he was not in possession of the property, we are in no position to say that the chancery court erred in holding that he was in possession. Even though the possession of one tenant in common is the possession of all, the cotenant who is in possession owes certain duties to the other tenants for whom he holds possession, particularly when the tenancy is one giving rise to a relationship of trust and confidence.

It is the general rule in this country that the tenant in common in possession occupies a confidential relation to his cotenants. *Brietman v. Jaehnal*, 99 N.J. Eq. 243, 132 A. 291 (1926). A tenant in common while occupying the property owes a duty to his co-owner to act as a reasonably prudent person in looking after and preserving the property and the relationship of trust and confidence binds all to protect and secure the common interest. *Smither v. Betts*, 264 S.W. 2d 255 (Ky., 1954); *Crawford v. Wiedemann*, 170 Ky. 613, 186 S.W. 509 (1916). Thus, it has been held that it is the occupying tenant's duty to keep the property insured and insurance taken by him will inure to the benefit of both. *Mastbaum v. Mastbaum*, 126 N.J. Eq. 366, 9 A. 2d 51 (1939); *Smither v. Betts*, supra; *Crawford v. Wiedemann*, supra. See also, *In re Estate of Ray*, 7 Ill. App. 3d 433, 287 N.E. 2d 144 (1972).

I think that the facts in this case bring this case within the purview of those in which the tenancy in common is such that a fiduciary relationship exists between the tenants in common and that insurance coverage taken by the tenant in possession inures to the benefit of the tenant out of possession.

Accordingly, I would affirm the judgment.

GEORGE ROSE SMITH, Justice, dissenting. In *Barner* v. *Barner*, 241 Ark. 370, 407 S.W. 2d 747 (1966), we held that a fire insurance policy taken out by a life tenant did not inure to the benefit of the remainderman, *in the absence of a fiduciary relation between the two*. The reason is that an insurance policy is a personal contract for the benefit of the person with whom it was made and by whom the premiums were paid.

Thus the controlling distinction is whether or not a fiduciary relationship exists. Here the parties were divorced. Thereafter there was not even a confidential relationship between them, much less a fiduciary one, merely because they had formerly been husband and wife.

They were, however, tenants in common with respect to the insured property. We have said that tenants in common *by descent* (such as brothers and sisters) are in a fiduciary relationship, because they stand by operation of law in a confidential relation to each other. *Clements* v. *Cates*, 49 Ark. 242, 4 S.W. 776 (1887). The *Clements* holding has been cited in a number of cases, but it has not been applied except to cotenants who held the property by common descent or devise. Quite the contrary, we pointed out in *Trout* v. *Harrell*, 217 Ark. 670, 233 S.W. 2d 233 (1950), that "the mere relationship of a co-tenancy does not, *ipso facto*, create a confidential relationship in all the dealings between the parties, even though such a relationship may exist in some matters."

The suggestion is made in a concurring opinion in this case that the *Clements* holding, creating a fiduciary relationship, should be applied to any tenants in common whose title is acquired by the same instrument. We have never so extended the rule. Such an extension was stated, as dictum, in a quotation to be found in *Brittin* v. *Handy*, 20 Ark. 381 (1859), but in that case the court pointed out that "Brittin and Handy were not tenants in common under the same instrument." Nor as far as I can find, has any such rule been applied in any other Arkansas case.

Such an extension of the fiduciary principle would put form above substance. Suppose, for example, that two

business acquaintances decide to buy an apartment house together. They might equally well have the seller make a single deed conveying the property to them as tenants in common or have him make separate deeds conveying a half interest to each grantee. The difference is simply one of form, as the final substantive effect of the transactions is exactly the same. But, according to the argument now being made, when only one deed is used the two men are fiduciaries toward each other. Thus, for example, if one seeks to buy the other's half interest, he must make a full disclosure of everything he knows about the property. If, however, the common title had been acquired by separate deeds, even as part of the same transaction, the two men would be in a position to negotiate at arm's length, with no fiduciary obligation toward each other. Surely the obligation of a fiduciary — perhaps the most burdensome position of trust that the law has ever created — should rest upon some legal or moral duty, not upon the extraneous fact that one deed rather than two was used in the transfer of property.

It is nevertheless true, however, that when the conduct of cotenants affects the entire property, they are unavoidably under an obligation to one another. Thus when one cotenant possesses the entire property or pays taxes upon it, his action inures to the benefit of the other owners. Someone must be in possession, someone must pay the taxes; such matters are *ordinarily* not susceptible of separate action.

I have emphasized the word *ordinarily*, because the situation is different if the interests of the cotenants are separable for a particular purpose. That situation was presented in *Neilson* v. *Hase,* 229 Ark. 231, 314 S.W. 2d 219 (1958). There the two cotenants each owned an undivided half interest in certain minerals, but their interests were separately assessed for taxation. In holding that one cotenant was at liberty to buy the other's half interest at a delinquent tax sale, we based our decision on the fact that the purchasing cotenant was under "no duty or obligation, legal or moral," to pay the taxes on the other's interest. That decision is sound and should control the case at bar.

The same reasoning is applicable to fire insurance. Each cotenant is free to insure his own interest, just as the life ten-

ant and the remaindermen in the *Barner* case, supra, were free to insure their own interests. That is what the divorced husband did in this case. The policy provides that it insures the named insured, Bill Brown, to the extent of the actual cash value of the property, *but in any event not more than his interest.* Perhaps the insurance company might have contested its liability on the ground that its insured owned only an undivided half interest in the property and had overinsured its value. But I do not see how the divorced wife, absent any fiduciary relationship, is in a position to demand the protection of a fire insurance policy that was not payable to her, that did not insure her interest in the property, and for which she contributed no part of the premium.

BYRD, J., joins in this dissent.